UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-62676-RUIZ/STRAUSS

**MARIA CEVALLOS VALDERRAMOS,**
as Personal Representative of the Estate of
GIA KATELIN ALBAN, deceased**,**

    Plaintiff,
v.

**GITI TIRE (USA) LTD.,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court upon Plaintiff's Motion to Remand to State Court [DE 12] ("Motion"). The Motion has been referred to me to take all necessary and proper action as required by law [DE 19]. I have reviewed the Motion, the Response [DE 17] and Reply [DE 18] thereto, Defendant's Supplemental Response [DE 24], Plaintiff's Reply thereto [DE 27], the Notice of Removal [DE 1], and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 12] be **GRANTED**.

## BACKGROUND

On April 30, 2019, Plaintiff commenced this action against Defendant, GITI Tire (USA) Ltd. ("GITI"), as well as two Wal-Mart entities and certain Wal-Mart employees (collectively, "Wal-Mart Defendants"). Plaintiff and the Wal-Mart Defendants subsequently engaged in settlement discussions, which resulted in their eventual entry into a confidential settlement agreement around January 7, 2020. Declaration of Branden Weber, Esq. ("Weber Decl.") [DE 12-1] ¶ 8. However, a stipulation of dismissal (as to the Wal-Mart Defendants) was not filed until

November 30, 2020.  Plaintiff's counsel asserts that the Wal-Mart Defendants were not dismissed from the case at the time of the settlement due to "an apparent oversight."  *Id.* ¶ 10.

On December 30, 2020, GITI, the only remaining defendant, filed its Notice of Removal [DE 1], stating that diversity jurisdiction exists because Plaintiff and GITI are citizens of different states and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States.").  GITI indicates that the presence of the Wal-Mart employees in the action previously prevented complete diversity because they are citizens of Florida (like Plaintiff).  [DE 1] ¶¶ 8-9.  However, the dismissal of the Wal-Mart Defendants resulted in the dismissal of all non-diverse defendants.  *See id.*

It is undisputed that Plaintiff and GITI are citizens of different states and that the amount in controversy exceeds $75,000.  It is also undisputed that the Wal-Mart employees are non-diverse from Plaintiff and that GITI removed this action within the 30-day period under 28 U.S.C. § 1446(b)(3) – within 30 days of the dismissal of the Wal-Mart Defendants.  *See* § 1446(b)(3) ("Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.").

Instead, because this case was removed more than 1 year after it was commenced, the sole issue here is whether Plaintiff "acted in bad faith in order to prevent [GITI] from removing the action" prior to April 30, 2020 (1 year from commencement).  *See* 28 U.S.C. § 1446(c)(1) ("A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section

1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.").

## ANALYSIS

GITI has failed to show that Plaintiff acted in bad faith to prevent removal prior to the 1-year mark. As noted above, a defendant in a diversity case has 1 year from the commencement of such a case in state court to remove it to federal court. *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 292 (5th Cir. 2019). An exception to the 1-year limitation exists where "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* (quoting § 1446(c)(1)). *See also Imperial Fund I, LLC v. Orukotan*, No. 21-CV-60162-RAR, 2021 WL 752577, at *2 (S.D. Fla. Feb. 25, 2021) (noting that the bad-faith exception is the "sole exception" to the 1-year limitation).

The bad-faith exception was initially adopted in 2011 amendments to § 1446. *See Hoyt*, 927 F.3d at 293. "Before 2011, § 1446 prohibited defendants . . . from removing a case 'more than 1 year after commencement of the action'—full stop." *Id.* (citing 28 U.S.C. § 1446(b) (2006)). Although the text of the pre-amendment statute contained no exceptions, some courts, including the Fifth Circuit – in *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 424 (5th Cir. 2003) – considered equitable exceptions such as equitable tolling and equitable estoppel; other courts did not. *See Hoyt*, 927 F.3d at 293. Nevertheless, in *Hoyt*, the Fifth Circuit recognized that courts can no longer consider equitable exceptions to the 1-year limitation in light of the 2011 amendment to the statute, pursuant to which Congress "chose to replace *Tedford*'s equitable-estoppel principle with a 'bad faith' standard." *Id.* at 294.[1]

---

[1] For this reason, GITI's reliance on *Noyes v. Universal Underwriters Ins. Co.*, 3 F. Supp. 3d 1356, 1362-63 (M.D. Fla. 2014), which relied on *Tedford* and pre-2011 case law in finding that the 1-year limitation is subject to equitable considerations, is misplaced. *See Hoyt*, 927 F.3d at 293-94

3

The Eleventh Circuit has not defined "bad faith" in the context of § 1446(c)(1). *See NPV Realty, LLC v. Nash*, No. 8:17-CV-636-T-30AEP, 2017 WL 1735101, at *2 (M.D. Fla. May 4, 2017). However, in *Hoyt*, the Fifth Circuit recognized that "[w]hen it comes to bad faith . . . the question is what motivated the plaintiff *in the past*—that is, whether the plaintiff's litigation conduct meant 'to prevent a defendant from removing the action.'" 927 F.3d at 293 (quoting § 1446(c)(1)). Other courts have chosen to apply the following two-part test (a test both parties here discuss in their briefing) articulated by a district court in New Mexico in 2014:

> First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.

*NPV Realty*, 2017 WL 1735101, at *2 (quoting *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1262-63 (D.N.M. 2014)).

While the *Aguayo* test may be useful in many cases, here it only serves to overcomplicate a very simple issue. Whether Plaintiff actively litigated against the Wal-Mart Defendants and, in particular, the Wal-Mart employees, is ultimately irrelevant to the issue of bad faith under § 1446(c)(1). That is because Plaintiff and the Wal-Mart Defendants entered into a settlement agreement nearly 4 months before the anniversary of the case. Thus, if Plaintiff had dismissed the Wal-Mart Defendants a day, a week, a month, or even 3 months after the date of the settlement,

---

(noting that pre-amendment case law and the *Tedford* exception no longer apply and that "[w]e now apply the new § 1446 and the bad-faith exception Congress created").

the dispute presently before the Court would not exist. Consequently, whether Plaintiff actively litigated against the Wal-Mart Defendants prior to their entry into a settlement agreement is wholly irrelevant to determining whether Plaintiff "acted in bad faith in order *to prevent a defendant from removing the action*." § 1446(c)(1) (emphasis added). Instead, what is relevant is why Plaintiff failed to dismiss the Wal-Mart Defendants from the case between their entry into a settlement agreement and the 1-year mark – between January 7, 2020 and April 30, 2020. Again, had Plaintiff dismissed the Wal-Mart Defendants from the case at any time prior to April 30, 2020, then Plaintiff's conduct would not have prevented GITI from removing the case.

The inquiry thus becomes whether Plaintiff acted in bad faith in dismissing the Wal-Mart Defendants after the 1-year mark. That inquiry turns on whether Plaintiff *intentionally or deliberately* waited to dismiss the Wal-Mart Defendants from the case until after the 1-year anniversary of the case passed, or whether the delayed dismissal of the Wal-Mart Defendants was merely due to "an apparent oversight" as Plaintiff's counsel attests. *See Wilson v. Fresh Mkt., Inc.*, No. 9:19-CV-81037, 2020 WL 355192, at *5 (S.D. Fla. Jan. 3, 2020), *report and recommendation adopted*, 2020 WL 354967 (S.D. Fla. Jan. 22, 2020) ("[C]ases finding bad faith conduct on behalf of plaintiffs . . . largely concern affirmative, deliberate acts that clearly reflect attempts at gamesmanship."). *See also Hopkins v. Nationwide Agribusiness Ins. Co.*, No. 4:18-CV-00315-KOB, 2018 WL 3428610, at *4 (N.D. Ala. July 16, 2018) (rejecting the *Aguayo* test and finding that "the 'bad faith' exception requires a showing that the plaintiff intentionally engaged in misconduct to prevent removal before the one-year time limit expired").

GITI has failed to provide any evidence to show that the delay in dismissal was anything other than "an apparent oversight." GITI points to two sets of circumstantial evidence arising after the January 2020 settlement to imply bad faith. The first is the unusual gap between the entry into

5

the settlement agreement and the stipulation of dismissal. The second critiques Plaintiff's counsel's explanation for how he became aware of the "apparent oversight" by juxtaposing emails sent in March, April, and November 2020. GITI notes that it only learned about Plaintiff's settlement with the Wal-Mart Defendants on November 23, 2020 (1 week before dismissal of the Wal-Mart Defendants) when GITI's counsel sent an email to Plaintiff's counsel and counsel for the Wal-Mart Defendants regarding a proposed agreed protective order. Plaintiff's counsel responded that Wal-Mart was no longer a defendant. It is from that November 23, 2020 email that Plaintiff's counsel indicates Plaintiff realized the oversight in not dismissing the Wal-Mart Defendants following the settlement. GITI argues that even if Plaintiff overlooked dismissal following the settlement, emails from GITI's counsel in March and April 2020 (prior to the 1-year mark) that similarly included or referred to counsel for the Wal-Mart Defendants should have alerted Plaintiff to the issue. Indeed, GITI infers that Plaintiff's counsel's reply to the March email demonstrates that that email did alert Plaintiff to the issue. However, the circumstances surrounding those March and April emails are not sufficiently strong to undermine Plaintiff's counsel's explanations and infer intentional, bad faith conduct.

In the March email, GITI's counsel copied multiple people, including counsel for the Wal-Mart Defendants. When Plaintiff's counsel responded, he did not copy anyone other than his boss. *See* [DE 17-1] at p. 4. GITI contends that Plaintiff's counsel removed counsel for the Wal-Mart Defendants from the email (implying the removal was intentional and suspicious). But GITI fails to note that virtually everyone else who was copied on the initial email was also removed from the response email (which contained 1 word). As to the April 2020 email, GITI notes that it mentioned counsel for the Wal-Mart Defendants, but as Plaintiff notes, the reference to counsel for the Wal-

6

Mart Defendants was merely a tangential reference of little ultimate consequence.[2]  While in hindsight one can see how these two emails could have, and perhaps even should have, reminded Plaintiff's counsel that it had not dismissed the Wal-Mart Defendants, the facts regarding the March, April, and November 2020 emails are insufficient to make the large inferential leap that Plaintiff's counsel engaged in bad faith conduct aimed at preventing removal before the 1-year mark.

Nevertheless, the substantial delay between the settlement with, and dismissal of, the Wal-Mart Defendants, and the other facts and arguments presented in the briefing, raised sufficient suspicion that I ordered Plaintiff to provide certain limited discovery to GITI.[3]  Specifically, I ordered Plaintiff to produce the following: "(a) the settlement agreement between Plaintiff and the Wal-Mart Defendants; and (b) all emails and other correspondence between Plaintiff's counsel and counsel for the Wal-Mart Defendants that relate to the dismissal of the Wal-Mart Defendants (including, but not limited to, the timing thereof)." [DE 20] ¶ 1.  I allowed Plaintiff to redact portions completely unrelated to the issue of dismissal of the Wal-Mart Defendants. *See id.* ¶¶ 2-

---

[2] The April 2020 email provides as follows:

> Drew and Brandon, Drew and I talked at the beginning of April I think. My memory may be off, but I think he was going to check on the status of the subject tire getting inspected by your expert and whether it got done yet. Just trying to stay productive during this virus thing, so let me know when you are ready to send the subject tire to Grant. Not sure whether Tarlow [counsel for the Wal-Mart Defendants] has dibs on the subject tire before I do. Let me know if there is anything else you want to do on this one in May or June to keep it moving forward, if even just a little bit.

[DE 17-1] at p. 3.

[3] Many courts in similar situations have not afforded the removing party with the opportunity to obtain discovery. *See, e.g.*, *Aguayo*, 59 F. Supp. 3d at 1263.

3. I also ordered supplemental briefing to occur following production and instructed GITI to address

> whether any of the production . . . refutes Plaintiff's counsel's statement that "a stipulation of dismissal of the Wal-Mart Defendants was not immediately filed because of an apparent oversight." [DE 12-1] ¶ 10. Ultimately, the supplemental response should address whether any of the production shows that Plaintiff acted in bad faith in order to prevent Defendant from removing the action. The supplemental response should be limited to addressing the issue based upon the production.

[DE 20] ¶ 5.

GITI filed its supplemental response [DE 24] on March 4, 2021, as ordered. The supplemental response takes issue with the sufficiency of Plaintiff's production and the level of redactions in the production, and it claims that Plaintiff violated "the letter or the spirit" of my order regarding production [DE 20], but it fails to establish any such violation. GITI's complaints regarding the sufficiency of production aside, GITI notably does acknowledge that the production "does not appear to contain direct evidence of deliberate misconduct." [DE 24] at p. 3. Nor does GITI highlight any additional circumstantial evidence of deliberate misconduct.

To be clear, I do not find that "direct evidence" of deliberate misconduct is or is not required. Circumstantial evidence may or may not suffice depending on the facts and circumstances. For instance, if dismissal here had occurred the day, or within weeks, after the 1-year mark, GITI's bad-faith argument would be substantially stronger. *Cf. Hoyt*, 927 F.3d at 292-93 (finding district court did not clearly err in finding bad faith where, *inter alia*, non-diverse defendant was dismissed 2 days after the 1-year mark). But that is not what occurred here. Dismissal did not occur until 7 months after the 1-year mark. While such a lengthy gap between the 1-year mark and dismissal does not automatically equal an absence of bad faith, it does (without more) at least weaken the inference that GITI seeks to draw that the delay was purposefully done

to prevent removal, and it does support Plaintiff's counsel's claim of "an apparent oversight." At the very least, GITI has failed to provide evidence to refute Plaintiff's counsel's attestation of "an apparent oversight."

For the foregoing reasons, there is simply insufficient evidence to establish that Plaintiff acted in bad faith in order to prevent GITI from timely removing this action. Therefore, remand is required.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **GRANT** the Motion [DE 12] and **REMAND** this case to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 8th day of March 2021.

*[signature]*
Jared M. Strauss
United States Magistrate Judge